# UNITED STATES DISTRICT COURT
## for the
## Middle District of North Carolina

## Petition for Warrant or Summons for Offender Under Supervision

| | | | |
|---|---|---|---|
| Name of Offender: | CHE L. SIMONS | Docket Number: | 1:18CR234-1 (ED/WI)<br>1:20CR311-1 (MD/NC) |

Name of Sentencing Judicial Officer: The Honorable William C. Griesbach

Date of Original Sentence: January 22, 2020

Original Offense: Count 2: Financial Institution Fraud in violation of 18 U.S.C. §§ 1344 & 2.
Count 6: Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A & 2.

Original Sentence: 1 day imprisonment as to Count 2, and 20 months as to Count 6, to run consecutive to each other for a total term of 20 months and 1 day imprisonment, followed by 3 years of supervised release as to Count 2 and 1 year as to Count 6 to run concurrent to each other for a total term of 3 years supervised release.

July 29, 2020: Jurisdiction was transferred from the Eastern District of Wisconsin by the Honorable William C. Griesbach to the Middle District of North Carolina and was accepted by the Honorable Thomas D. Schroeder.

February 9, 2022: Order on Report of Offender Under Supervision was filed.

April 11, 2022: Order on Request to Modify Conditions of Supervision was filed.

November 4, 2022: Supervised release was revoked. Sentenced to 18 months imprisonment, followed by 2 years supervised release.

October 9, 2023: Order on Request to Modify Conditions of Release was filed.

Type of Supervision: Supervised Release          Date 2nd Term of Supervision Commenced: September 15, 2023
Date Supervision Expires: September 14, 2025

Assistant U.S. Attorney: Daniel R. Humble          Defense Attorney: Steven G. Richards

---

## PETITIONING THE COURT

[X]   To issue a Warrant. For compelling reasons, this Petition and Warrant shall remain sealed until the Warrant is executed except as necessary for law enforcement to effect the arrest of the defendant. The Clerk shall provide a copy of the petition and Warrant to the U.S. Attorney's Office and the United States Marshals Service.

The probation officer believes that Mr. Simons has violated the following condition(s) of supervision:

**Violation 1 - You must not unlawfully possess or use a controlled substance.**

The probation officer met with Mr. Simons on September 18, 2023. He admitted to marijuana use while in the Bureau of Prisons (BOP) to cope with his anxiety. He reported his last marijuana use as September 9, 2023.

Mr. Simons tested positive for marijuana on seven occasions between October 3, 2023, and January 4, 2024. On October 3, 2023, Mr. Simons advised he smoked a lot of marijuana in the BOP and that is why his October 3, 3023, urinalysis was still testing positive for marijuana. Due to his of marijuana use and deceit to the probation officer, the six positive urinalyses collected between October and December 2023 were sent to Abbott Toxicology for confirmation and to establish the levels and timing of his use. According to the interpretation report provided by Abbott Toxicology in January 2024, Mr. Simons reused marijuana before and after each drug test; therefore, the positive results were not from residual use. In addition, Mr. Simons signed admission statements on November 1 and December 21, 2023, to acknowledge his use of marijuana.

He tested positive for amphetamine on three occasions between November 3 and December 4, 2023, and he denied use each time. The specimens were sent to the national drug testing laboratory, Abbott Toxicology, and all three were confirmed positive for amphetamine.

Mr. Simons tested positive for cocaine on October 17, 2023. He denied using cocaine; therefore, the sample was sent to Abbott Toxicology and was confirmed positive.

**Violation 2 - After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.**

On September 18, 2023, Mr. Simons was enrolled in the probation office's random drug testing program, NAPP. On November 1, 2023, he received a text notification to report for a drug test the following day between the hours of 7:30AM to 3:30PM. However, Mr. Simons failed to acknowledge the message; therefore, the probation officer followed up with him on November 2, 2023, at 9:48AM. Mr. Simons advised he did not receive the message. The probation officer sent a test message to Mr. Simons, and he received the message. The probation officer instructed him to report before 3:30PM and he failed to report as directed.

On January 9, 2024, Mr. Simons received a text notification to report for a drug test the following day. Mr. Simons failed to acknowledge the message; therefore, the probation officer followed up with him on January 10, 2024. Mr. Simons advised he just saw the probation officer on January 4, 2023, and "pissed" then and should not have to come back in. The probation officer reviewed with Mr. Simons his requirement to report for random drug screens and that was separate and apart from his regular contacts with the probation officer. Ultimately, Mr. Simons failed to report as directed.

Since January 4, 2024, the probation has made numerous requests for Mr. Simons to supply his address information and his whereabouts. As of the date of this report, Mr. Simons has failed to provide the requested information. He has made himself unavailable for supervision and his whereabouts are unknown to the probation officer.

**Violation 3 - You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.**

Mr. Simons has been unemployed throughout his supervision. He reported at his initial appointment that he could get a job at 1-800-JUNK. Unfortunately, that employment never came to fruition. On November 3, 2023, the probation officer informed Mr. Simons of an immediate employment opportunity with Randstad

RE: CHE L. SIMONS                                                                                      3

Staffing.  Mr. Simons advised that he signed up for barber school and would begin classes soon; therefore, he declined this employment opportunity.  On November 17, 2023, the probation officer referred Mr. Simons to Hire Dynamics for a specific job placement.  The probation officer supervises another individual under supervision at the job placement and that individual agreed to allow Mr. Simons to use their name as a reference so Mr. Simons would be hired.  Mr. Simons never followed through on this noting he was either confused about the application process or kept forgetting the name of the individual that was provided to him.  To date, Mr. Simons has not enrolled in, or participated in, any continuing education.

**Violation 4 - You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.**

Mr. Simons submitted a release plan prior to his release from imprisonment to reside with Andrea Cannon in Harrisburg, NC.  The probation officer noted several concerns with this plan due to a documented history of violence between Mr. Simons and Ms. Cannon during Mr. Simon's last period of supervision.  Despite this information, Ms. Cannon was agreeable to allowing Mr. Simons to reside with her.  The probation officer contacted Ms. Cannon's mother, Savalas Cannon, to ensure this decision was approved by her as head of household.  Savalas Cannon advised Mr. Simons could not reside with them per her husband's wishes and per the rules established by the Department of Social Services (DSS).  Due to the past violent actions between Mr. Simons and Ms. Cannon, DSS has an active case open on their children.  The probation officer worked to find Mr. Simons another release plan.  Mr. Simons' mother, Beverly Simons, agreed to house Mr. Simons; however, she lived in Georgia.  After following up on other residence options, it was determined by the probation officer that Ms. Simons was the only appropriate release plan.  Therefore, the probation officer notified Mr. Simons' BOP case manager of the approved release plan.

On September 11, 2023, Mr. Simons called the probation officer from the BOP.  He was agitated and stated he would not be living with his mother just because the probation officer states he cannot live with Ms. Cannon.  The probation officer reviewed with Mr. Simons that per an open case with DSS regarding their children he could not live with Ms. Cannon.  Further, Ms. Cannon's parents do not want Mr. Simons living there.  Mr. Simons advised he would live with his cousin, Cameron Davis, in Charlotte, NC; however, could not provide an address or phone number for Mr. Davis.  Upon further questioning the probation officer learned Mr. Davis was not a family member but instead a friend.  The probation officer conducted role clarification with Mr. Simons noting the probation officer was making efforts to set Mr. Simons up for success.  The probation officer provided Mr. Simons reporting instructions; however, Mr. Simons declined the probation officer's information noting he would be calling the supervisor and requesting a new probation officer.  The probation officer emailed reporting instructions after the call to the BOP case manager.

Mr. Simons reported to the probation office over one hour late for his initial appointment on September 18, 2023.  He reported he stayed at a hotel in Concord, NC, his first two nights of release and was now residing with Brandon Singleton in Charlotte, NC, which is outside of the Middle District of North Carolina.  The probation officer spoke with Mr. Singleton and his mother, Tacola Miller, on September 18, 2023, confirming Mr. Simons could reside with him.

The probation officer initiated an expedited supervision transfer request to the Western District of North Carolina (WD/NC).  On September 29, 2023, the WD/NC denied Mr. Simons' transfer request after they smelled marijuana during a home investigation and because Mr. Singleton nor Mr. Miller lived at the proposed address.  Further, none of the individuals they encountered at the residence knew who Mr. Simons was.  Mr. Simons was told to provide another residence plan or to proceed to the homeless shelter.

On October 2, 2023, the probation officer followed up with Mr. Simons due to his failure to provide a residence plan.  Mr. Simons advised he was "still talking to people".  He was instructed to report to the probation office on October 3, 2023.  Mr. Simons was agitated throughout the call and used inappropriate

RE: CHE L. SIMONS                                                                                           4

language. He requested to speak to the probation officer's supervisor. Supervisory U.S. Probation Officer (SUSPO) Stacey Burleyson spoke to Mr. Simons on October 2, 2023, and he was again instructed to report to the probation office the following day.

Mr. Simons advised on October 3, 2023, that he did not have a stable residence. He advised he had enough funds to stay in a hotel for two weeks in lieu of the homeless shelter. The probation officer agreed to him staying in a hotel for two weeks while searching for a permanent residence. Mr. Simons checked into the Econo Lodge later that day. On October 10, 2023, the probation officer attempted an unannounced contact at the Econo Lodge and the manager advised that Mr. Simons checked in on October 3 and checked out on October 5. Mr. Simons failed to notify the probation officer of this information and the probation officer was unaware of his whereabouts. The probation officer contacted Mr. Simons on October 10, 2023, to discuss his residence plans and failure to communicate with the probation officer. He advised his sister did not have anymore money to pay his hotel bill; therefore, he was staying at different places and looking for a residence.

Mr. Simons contacted the probation officer on October 11, 2023, and advised he had moved in with a friend, Jarrett Smalls, in Concord, NC. The probation officer contacted Mr. Smalls on October 11, 2023, and confirmed that was accurate. A scheduled home inspection was conducted on October 18, 2023, and the residence was approved by the probation officer.

On January 3, 2024, the probation officer made an unannounced home contact. Mr. Smalls advised that Mr. Simons had not lived at the residence for about three weeks, and he did not know where he was residing. The probation officer contacted Mr. Simons by telephone and instructed him to report to the probation office the following day. Mr. Simons reported as directed and accused Mr. Smalls of lying. When asked where he was residing, he insisted he was still living with Mr. Smalls.

**Violation 5- The defendant is to pay restitution at a rate of not less than $100.00 per month or 10% of his or her net earnings, whichever is greater. The defendant will also apply 100 percent of his or her yearly federal and state tax refunds towards the payment of restitution. The defendant shall not change exemptions without prior notice of the supervising probation officer.**

Mr. Simons has failed to make any payments towards the joint and several restitution amount of $106,721.08. Per the payment schedule, Mr. Simons is to pay $100 per month beginning in October 2023; therefore, he is $400 in arrears. There is an outstanding restitution balance of $103,703.00. The other responsible parties have paid $3,018.08 thus far.

**Violation 6 - The defendant shall cooperatively participate in a mental health treatment program, which may include inpatient treatment, and pay for treatment services, as directed by the probation officer.**

**Violation 7 - The defendant is to participate in a program of testing to include not more than six urinalysis tests per month and residential or outpatient treatment for drug and alcohol abuse, as approved by the supervising probation officer, until such time as he or she is released from such program. The defendant shall pay the cost of this program under the guidance and supervision of the supervising probation officer, The defendant is to refrain from excessive use of alcoholic beverages throughout the supervised release term. "Excessive", as used here, shall be defined as exceeding a blood alcohol level of 0.08%.**

Once Mr. Simons moved in with Mr. Smalls on October 11, 2023, the probation officer believed his housing was stable enough to move forward with treatment services. The probation officer referred him for a co-occurring assessment at Genesis-A New Beginning (GANB) to address his substance abuse and mental health issues. The probation officer received special permission to allow Mr. Simons to report for services at the Concord, NC, office due to his reported transportation barrier. This placed Mr. Simons one mile from his approved residence to GANB and in a position to utilize the bus line in Concord.

RE: CHE L. SIMONS                                                                                                    5

GANB diagnosed Mr. Simons with cannabis and stimulant use disorder and posttraumatic stress disorder. They recommended Mr. Simons attend a minimum of 15 individual counseling sessions with focus on both mental health and substance abuse. GANB further recommended a psychiatric evaluation to explore continued medication management to manage his mental health symptoms. Mr. Simons' attendance has been marginal at best. The probation office has spent $420 on treatment services rendered in October and November 2023.

On January 4, 2024, the probation officer reviewed the following issues Mr. Simons was having which include continued drug use, inconsistent treatment attendance, lack of stable housing, employment, monetary funds, and transportation, lack of progress on educational goals, and issues with fulfilling his obligations with his child custody case. The probation officer, in collaboration with the treatment provider, recommended a higher level of treatment. The probation officer advised that residential inpatient treatment was appropriate and could help him with the issues noted above. Mr. Simons requested to be allowed to go to substance abuse groups first. The probation officer questioned his ability to transport himself to groups in Salisbury, NC, due to his inability to attend individual sessions located one mile from his approved residence. He acknowledged it would be very difficult. The probation officer explained to Mr. Simons what residential inpatient services could do for him, and that the Court would be notified of his noncompliance thus far. Therefore, entering a residential inpatient treatment could weigh favorably on the Court's response. Ultimately, Mr. Simons agreed and he accepted three facility referrals from the probation officer that he committed to follow up on.

Mr. Simons has not provided the probation officer with any information regarding inpatient treatment. The probation officer completed applications on Mr. Simons' behalf at two of the three referrals provided to him on January 4, 2024. On January 16, 2024, the probation officer was advised by S&H Adult and Youth Services that they would accept Mr. Simons into their residential treatment services program if he first completed detoxification. The probation officer provided this update to Mr. Simons on January 16, 2024, and followed up with him the following day. Mr. Simons advised the probation officer he would immediately follow up on the information for detoxification. Despite knowing S&H Adult and Youth Services was holding a bedspace for him, Mr. Simons has failed to follow through on detoxification. Due to Mr. Simons' lack of action, S&H Adult and Youth Services could no longer hold a bed space for him.

U.S. Probation Officer Recommendation:

[X]     The term of supervision should be
        [X]     revoked.

I declare under penalty of perjury that the forgoing is true and correct.

Executed on     January 24, 2024

Danielle A. Cooke
U.S. Probation Officer Specialist

Approved by:

Stacey G. Burleyson
Supervisory U.S. Probation Officer

January 24, 2024
Date